UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x
KAREN J. DESROCHER, Individually and on :    Civil Action No. 14-cv-03878-AKH
Behalf of All Others Similarly Situated,    :
   :    CLASS ACTION
               Plaintiff,    :
   :
     vs.    :    PLAINTIFFS' MEMORANDUM OF LAW
   :    IN SUPPORT OF MOTION FOR FINAL
   :    APPROVAL OF SETTLEMENT AND PLAN
COVISINT CORPORATION, et al.,    :    OF ALLOCATION
   :
           Defendants.    :
   :
———————————————— x

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................4

III. THE NOTICE OF PROPOSED SETTLEMENT SATISFIES THE
REQUIREMENTS OF RULE 23 AND DUE PROCESS AND IS
REASONABLE ....................................................................................................4

IV. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS..................................................................................................6

   A. The Law Favors and Encourages Settlements .........................................6

   B. The Settlement Must Be Procedurally and Substantively Fair, Adequate,
   and Reasonable ........................................................................................7

V. THE PROPOSED SETTLEMENT IS PROCEDURALLY AND
SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE....................9

   A. The Settlement Is Entitled to a Strong Presumption of Fairness .............9

   B. The Settlement Satisfies the *Grinnell* Factors .....................................10

      1. Continued Litigation Would Be Complex, Expensive, and
      Protracted ....................................................................................10

      2. The Lack of Objections to Date Supports Final Approval of the
      Settlement ....................................................................................13

      3. Plaintiffs Have Sufficient Information to Make Informed Decisions
      as to the Settlement .....................................................................13

      4. Establishing Liability and Damages Involves Significant Risks ...............16

         a. Risks in Establishing Damages.....................................17

         b. Risks in Establishing Liability......................................21

         c. The Risks Justify the Settlement...................................21

      5. Maintaining Class Action Status Through Trial Presents Risk ................22

      6. Defendants' Ability to Withstand a Greater Judgment.............................22

1178914_1

**Page**

       7.      The Settlement Amount Is Reasonable in View of the Best
Possible Recovery and the Risks of Litigation ..........................................23

VI.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR
AND ADEQUATE .................................................................................................25

VII.   CONCLUSION...........................................................................................................27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................22

*Cinelli v. MCS Claim Servs.*,
  236 F.R.D. 118 (E.D.N.Y. 2006) ..........................................................................16

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot*
  *v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ....................................................8, 15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................................8, 14

*Denney v. Jenkins & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ..........................................................................16

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................ *passim*

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...............................................................................................4

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792
  (S.D.N.Y. Oct. 24, 2005) ......................................................................................12

*In re Advanced Battery Techs. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................................7, 25

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) .......................................................................23

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................25

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006) ...................................................................................16, 24

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...............................................................14, 16

**Page**

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................9, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177
  (S.D.N.Y. July 27, 2007) .................................................................................................7

*In re Flag Telecom Holdings*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
  (S.D.N.Y. Nov. 5, 2010) ................................................................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417
  (S.D.N.Y. Dec. 19, 2014)...............................................................................................13

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635
  (N.D. Cal. Mar. 3, 2015) ..................................................................................................9

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)......................................................................................24

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................8, 10, 13, 22

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003).............................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .....................................................................................12

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ...............................................................................7, 13

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
  838 F. Supp. 729 (S.D.N.Y. 1993) ..................................................................................8

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .....................................................................................23

**Page**

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. 05-2165, 2009 WL 512081
   (E.D. La. Mar. 2, 2009) ................................................................................6

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) .........................................................................7

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..................................................... *passim*

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011) .........................................................................6, 8

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..........................................................7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) .......................................................7, 24

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809
   (S.D.N.Y. Nov. 7, 2007) .......................................................................16, 26

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..........................................................................25

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................................22

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...............................................................21

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .........................................................25

**Page**

*Int'l Bhd. of Elec. Workers Local 697*
*Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742
   (D. Nev. Oct. 19, 2012)....................................................................................................9

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)............................................................................................7

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................10, 14, 25, 26

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ...............................................................................10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...........................................................................................23

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   __ U.S. __, 135 S. Ct. 1318 (2015)..................................................................................2

*Park v. Thomson Corp.*,
   No. 05 Civ. 2931 (WHP), 2008 WL 4684232
   (S.D.N.Y. Oct. 22, 2008) ...............................................................................................21

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982), *aff'd sub nom.*
   *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..............................................14

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................11, 12

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261
   (S.D.N.Y. May 14, 2004)................................................................................................15

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................... *passim*

1178914_1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k ...................................................................................................... *passim*
  §77k(e) ...............................................................................................1, 17
  §77z-1(a)(4) ..............................................................................................1
  §77z-1(a)(7) ..............................................................................................6

Federal Rules of Civil Procedure
  Rule 23(c)(1)(C) ......................................................................................22
  Rule 23(c)(2) .............................................................................................6
  Rule 23(c)(2)(B) ....................................................................................4, 6
  Rule 23(e) ........................................................................................1, 4, 5, 6
  Rule 26(f) ................................................................................................14

**SECONDARY AUTHORITY**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements: 2015 Review and Analysis*
(Cornerstone Research 2016) ....................................................................2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff/Class Representative Charles Rankin and Plaintiff/Class Representative Karen J. Desrocher ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for approval of: (i) the $8,000,000 all-cash Settlement; and (ii) the proposed Plan of Allocation.[1]

## I.    PRELIMINARY STATEMENT

As of July 28, 2016, Covisint Corporation ("Covisint" or the "Company") and Compuware Corporation, on behalf of Defendants, paid a total of $8,000,000 in cash into an interest-bearing escrow account maintained on behalf of the Class in accordance with the terms of the Stipulation. This sum represents approximately 22% of the statutory cap on damages imposed by Section 11 of the Securities Act of 1933 (the "Securities Act").[2]  More importantly, however, the Settlement recovers: (i) at least 86% of the damages incurred as of the date when Defendants claim they rescinded the false projection about the Company's growth rate contained in the Registration Statement; (ii) 49% of the damages incurred as of the date when Defendants claim investors were on notice of the Company's true growth rate; and (iii) 26% of the damages incurred as of the date when Defendants made their last curative disclosure.[3]

---

[1]    Unless otherwise defined herein, all capitalized terms used herein are defined in the Second Revised Stipulation and Agreement of Settlement ("Stipulation" or "Settlement") filed with the Court on July 1, 2016 (Dkt. No. 82) and the Joint Declaration of Robert M. Rothman and Frank J. Johnson in Support of Final Approval of Settlement, Plan of Allocation, an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Joint Decl."), submitted herewith.  Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) is also being filed concurrently herewith.

[2]    Under Section 11 of the Securities Act, damages are capped at the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.  *See* 15 U.S.C. §77k(e).

[3]    These calculations assume that the value of the stock equaled its trading price following the disclosure at issue.

Under any of these scenarios, the Settlement far exceeds the percentage of damages typically recovered in securities class action cases.  Indeed, this Settlement recovers a multiple of the median recovery of 11.4% of estimated damages in similar cases with estimated damages of less than $50 million (where this Settlement falls) between 2006-2014.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis* at 9, Figure 8 (Cornerstone Research 2016), attached as Exhibit A to the Joint Declaration.  In addition, the Settlement far exceeds the median recovery of 6.7% of damages obtained in such cases in 2015.  *Id.* Moreover, the Settlement provides Class Members with exponentially more than the median 2.3% of damages recovered in securities class action settlements within the Second Circuit from 2006 through 2015.  *Id.* at 22, Figure 21.

The Settlement is particularly noteworthy because it was obtained following an intervening change in law.  During the pendency of the Action, the Supreme Court issued its opinion in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, __ U.S. __, 135 S. Ct. 1318 (2015) ("*Omnicare*"), which altered the standard for establishing a violation of the Securities Act in cases such as this that are based on false and misleading projections.  This Settlement eliminates any risk associated with any subsequent negative interpretations of the *Omnicare* decision.

The excellent result Plaintiffs achieved here is the product of their diligent efforts in prosecuting the Action, which included an extensive pre-filing investigation, briefing related to Defendants' motion to dismiss, class-related discovery, including the full-day deposition of Plaintiff Desrocher, and briefing related to Plaintiffs' motion for class certification (which was granted by the Court over Defendants' vigorous opposition).  Further, the Settlement was only achieved following arm's-length settlement negotiations among experienced and knowledgeable counsel, including a formal, full-day mediation session held on March 7, 2016 (and weeks of subsequent negotiations),

- 2 -

conducted by a nationally-recognized, neutral mediator.  Based on Co-Lead Counsel's extensive experience in shareholder class action litigation,  the risks Plaintiffs and the Class would have faced had the litigation continued, specifically related to Defendants' negative causation arguments (*see infra* at Section V.B.4), and based on a comparison of the recovery produced by the Settlement with the median percentage recoveries in similar shareholder class action litigation over the past decade both nationally and within the Second Circuit, this Settlement represents an outstanding recovery for the Class, and should be approved by the Court.

The fairness of the Settlement is further evidenced by the fact that, to date, members of the Class have reacted positively to the Settlement.  Pursuant to the Order Providing for Notice ("Notice Order") (Dkt. No. 84), copies of the Notice were sent to over 7,000 potential Class Members and nominees beginning on July 21, 2016, and a Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on August 3, 2016.[4]  *See* Sylvester Decl., ¶¶4-10, 13. To date, there have been no objections to any aspect of the Settlement and no requests for exclusion from the Class have been received.  *Id.*, ¶14.

Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members.  The Plan of Allocation governs how claims will be calculated and ultimately how the settlement proceeds will be equitably distributed among Authorized Claimants.  For the purposes of formulating the Plan of Allocation and determining the amount an Authorized Claimant may recover under it, Co-Lead Counsel conferred with their damages consultant so that it reflects the statutory calculation of damages under §11 of the Securities

---

[4]     *See* Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Sylvester Decl."), submitted herewith on behalf of the Court-appointed Claims Administrator for the Settlement, Gilardi & Co. LLC.

Act, and thus calculates Class Member claims as they would have been calculated had Plaintiffs

prevailed at trial.  As such, it too is fair, reasonable, and adequate and should be approved.

The certainty and immediacy of the Settlement, which is the result of well-informed, arm's-

length settlement negotiations and achieves a significant percentage of total damages recovery for

the Class, when juxtaposed against the potential risks and associated delays of continued litigation,

justify this Court's approval of the Settlement.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Joint

Declaration for a detailed discussion of the factual background and procedural history of the Action,

the efforts undertaken by Plaintiffs and Co-Lead Counsel during the course of the Action, the risks

of continued litigation, and a discussion of the negotiations leading to the Settlement.

## III.     THE NOTICE OF PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS AND IS REASONABLE

Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."  Fed. R.

Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (class notice is

designed to fulfill due process requirements).  The standard for measuring the adequacy of a class

action settlement notice is reasonableness.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96,

114 (2d Cir. 2005).  "There are no rigid rules to determine whether a settlement notice to the class

satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that are

- 4 -

open to them in connection with the proceedings.'"  *Id.*[5]  "Notice is 'adequate if it may be understood by the average class member.'"  *Id.*

Here, in accordance with the Court's Notice Order, starting on July 21, 2016, the Claims Administrator caused the Notice and Proof of Claim and Release form (the "Proof of Claim"), as approved by the Court, to be mailed by First-Class Mail to potential Class Members and nominees. *See* Sylvester Decl., ¶¶4-5.  As of August 24, 2016, the Notice had been mailed to over 7,000 potential Class Members and nominees.  *Id.*, ¶10.  The Notice contains a thorough description of, *inter alia*: (1) the pendency of the Action; (2) the nature of the Action and the Class' claims; (3) the essential terms of the Settlement; (4) the proposed Plan of Allocation; (5) Class Members' rights to request exclusion from the Class, or object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (6) the binding effect of a judgment on Class Members; and (7) information regarding Co-Lead Counsel's motion for an award of attorneys' fees and expenses.  *See* Sylvester Decl., Ex. A.  The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (1) submitting a Proof of Claim; (2) requesting exclusion from the Class; and (3) objecting to any aspect of the Settlement, including the proposed Plan of Allocation and the request for attorneys' fees and expenses.

Additionally, on August 3, 2016, the approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*.  Sylvester Decl., ¶13 and Ex. C thereto.

Finally, information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim, was also posted on a website devoted solely to the administration of the Settlement (www.covisintsecuritieslitigation.com).  Sylvester Decl., ¶12.

---

[5]   All citations are omitted throughout, unless otherwise indicated.

The Notice also contains the information required by the PSLRA (15 U.S.C. §77z-1(a)(7)), including: (1) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (2) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); (3) a statement indicating the attorneys' fees and costs sought; (4) identification and contact information of counsel; and (5) a brief statement explaining the reasons why the parties are proposing the Settlement.  *See* Sylvester Decl., Ex. A; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003).

This combination of an individual, mailed Notice and Proof of Claim to all potential Class Members who could be identified with reasonable effort, as well as to custodian holders, and publication of the Summary Notice in one of the pre-eminent national business publications and over the internet, containing all of the information required by §27(a)(7) of the PSLRA was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  Indeed, this method of providing notice has been repeatedly approved for use in securities class actions and other comparable class actions.  *See, e.g.*, *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *7-*9 (E.D. La. Mar. 2, 2009) (mailing, internet publication, and newspaper publication satisfied due process notice requirements).  As such, there can be little argument that notice in this Action is more than adequate to meet the due process and Rule 23(c)(2) and (e) requirements for providing notice to the Class.

## IV.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."

- 6 -

*In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("the courts have long recognized that [complex class action] litigation 'is notably difficult and notoriously uncertain,' . . . and that compromise is particularly appropriate"). Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'" *Wal-Mart*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

"Due to the presumption in favor of settlement, '[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Advanced Battery*, 298 F.R.D. at 174 (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)). Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) ("*Grinnell*").

## B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Courts may approve a settlement that is binding on the class if it determines that the settlement is "'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart*, 396 F.3d at 116 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). This evaluation requires courts to consider both "the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *see also Wal-Mart*, 396 F.3d at 116.

- 7 -

With respect to the negotiation process, a class action settlement enjoys a "presumption of fairness" where, as here, it is the product of arm's-length negotiations between experienced and capable counsel. *See City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *Sadia*, 2011 WL 6825235, at *1.

With respect to the substantive terms of a settlement, courts in the Second Circuit consider the following factors (known as the "*Grinnell* factors") when determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). As such, the court should assess the settlement as presented, without modifying its terms, and without substituting its "'business judgment for that of counsel, absent evidence of fraud or overreaching.'" *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (quoting *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 737-38 (S.D.N.Y. 1993)).

Plaintiffs respectfully submit that the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate when measured under the relevant criteria and the circumstances of this Action and thus, warrants this Court's final approval.

## V. THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE

### A. The Settlement Is Entitled to a Strong Presumption of Fairness

As previously noted, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and experienced counsel. *See Wal-Mart*, 396 F.3d at 116; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement . . . ."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the presumption of fairness and adequacy is appropriate because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, without collusion, and following a full-day mediation session before a nationally-recognized mediator. *See Global Crossing*, 225 F.R.D. at 461; *see also* Joint Decl., ¶¶65-67. Indeed, the participation of the Honorable Layn R. Phillips (Ret.), a former federal district judge and a highly-qualified mediator, strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635, at *7 (N.D. Cal. Mar. 3, 2015) (finding Judge Phillips to be "an experienced mediator"); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 at *2 (D. Nev. Oct. 19, 2012) (settlement was fair

where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips").

The negotiation process that Judge Phillips oversaw also supports the presumption of fairness.  In that regard, the process included the preparation and exchange of detailed mediation statements, pre-mediation telephonic discussions with Judge Phillips concerning the issues raised in the mediation submissions, extensive follow-up questions by Judge Phillips concerning the potential challenges to reaching resolution, and candid and frank discussions about the strengths and weaknesses of the case, specifically issues related to loss causation and damages.  Joint Decl., ¶¶51-60.  Thus, Co-Lead Counsel were adequately informed of the strengths and weaknesses of the case by the time the Settlement was reached.  *See id.*, ¶¶61-64; *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("'"great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation'").

These and other considerations discussed in the Joint Declaration, therefore, confirm the reasonableness of the Settlement.  Thus, the Settlement should be entitled to the presumption of procedural fairness under Second Circuit law.

### B.  The Settlement Satisfies the *Grinnell* Factors

#### 1.  Continued Litigation Would Be Complex, Expensive, and Protracted

Courts have long recognized that the expense and possible or actual duration of the litigation should be considered in evaluating the reasonableness of a settlement.  *See, e.g.*, *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  Securities class actions are notoriously complex, difficult to prosecute, and expensive.  More importantly, there is no guarantee that the outcome will favor class members.  *IMAX*, 283 F.R.D. at 189 (holding that securities class action litigation is "'notably

difficult and notoriously uncertain'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (noting that continued litigation in a securities case would be complex, lengthy, and expensive, with no guarantee of recovery by the class members).

This Action presents no exception in its complexity and expense (both already accrued and likely to be expended) and had already been litigated for nearly two years when the Settlement was reached.   Indeed, the Complaint alleges that the Company's Registration Statement filed in connection with its September 2013 initial public offering contained material misstatements and omissions concerning, *inter alia*: (i) the Company's projected 20% growth rate for the fiscal year ended March 31, 2014; (ii) the Company's revenue recognition policy and practices; (iii) the Company's revenue and income; and (iv) the Company's earnings per common share.   Joint Decl., ¶21.   The Complaint also alleges that Defendants failed to disclose certain trends, events, and uncertainties they were required to disclose under Item 303 of SEC Regulation S-K, and certain risk factors they were required to disclose under Item 503 of the same regulation.   *Id.*   These allegations advanced numerous complex legal and factual issues, each of which would require expert discovery and testimony.   For example, at the time the Settlement was reached, Plaintiffs had already retained, and were working with, an expert in the Salesforce computer software program which is the platform utilized by Covisint to track the status of negotiations with prospective customers.   *Id.*, ¶39.   If the Action continued, Plaintiffs would need to retain the services of testifying experts to opine about issues of materiality, causation, and damages.

Although Plaintiffs had already successfully defended against Defendants' motion to dismiss and successfully obtained certification of the Class over Defendants' vigorous opposition, fact discovery had just started, expert discovery had yet to occur, and summary judgment motions would still have to be filed and decided.   "'[A] vast amount of additional factual and expert discovery

- 11 -

remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'" *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009). The trial in this Action would be complicated for jurors, and would be expensive for the Class, given the amount of fact and expert discovery that still needed to be taken if the Action continued. *See Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Even assuming, *arguendo*, that the Class could recover a larger judgment after a trial, the additional delay posed by the trial itself, as well as post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing any such recovery's value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). Moreover, another benefit of the Settlement is that the Court's time is no longer impacted by the case. In all likelihood, any trial in this case would have been lengthy. Thereafter, there would have been extensive post-trial motions. Assuming Plaintiffs won, the Court would have had to oversee the claims process, including any objections that Defendants had to particular claims. Finally, after all of those resources had been committed by this Court, Defendants would have undoubtedly appealed any adverse judgment. And, at that point, the Second Circuit's resources and time would have been impacted by the proceedings on appeal.

The $8,000,000 Settlement at this juncture results in an immediate and substantial recovery for the Class, without the considerable risk, expense, and delay of a trial, post-trial motions, and

- 12 -

subsequent appeals.   Therefore, Plaintiffs submit that these factors weigh heavily in favor of approval of the proposed Settlement.

### 2.     The Lack of Objections to Date Supports Final Approval of the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12.  The Notice, describing the nature of the Action and the terms of the Settlement, was distributed to over 7,000 potential Class Members and nominees.  Sylvester Decl., ¶10.  Additionally, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on August 3, 2016.  *Id.*, ¶13.  As of the date this motion was filed, no objections to the Settlement have been received and no investors have opted out of the Class.  However, the Court-ordered deadlines set for objections and to opt out are December 1, 2016 and November 28, 2016, respectively.  Accordingly, if Co-Lead Counsel receive any objections, they will be addressed in Plaintiffs' reply brief scheduled to be filed on December 8, 2016.

### 3.     Plaintiffs Have Sufficient Information to Make Informed Decisions as to the Settlement

In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'"  *Bear Stearns*, 909 F. Supp. 2d at 267 (quoting *IMAX*, 283 F.R.D. at 190).  "To satisfy this factor, parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 n.2 (S.D.N.Y. Dec. 19, 2014) (noting that discovery cannot commence in cases

- 13 -

brought under the PSLRA until the motion to dismiss is denied); *see also Maley*, 186 F. Supp. 2d at 363; *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement.") (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims.").

In this case, Plaintiffs had sufficient information to make an informed decision on the propriety of the Settlement.  As detailed in the Joint Declaration, the volume and substance of Plaintiffs' and Co-Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement.  This knowledge is based, first and foremost, on Plaintiffs' and Co-Lead Counsel's extensive investigation during the prosecution of this Action, including, *inter alia*: (i) review of Covisint's press releases, public statements, SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about Covisint; (ii) review of several investigative reports about Covisint and Plaintiffs' allegations; (iii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iv) filing the detailed Complaint; (v) successfully opposing Defendants' motion to dismiss the Complaint; (vi) successfully obtaining class certification over Defendants' vigorous opposition; (vii) serving discovery on Defendants; (viii) serving initial and supplemental disclosures; (ix) participating in a Rule 26(f) conference with Defendants; (x) responding to Defendants' discovery requests; (xi) working with a damages consultant; (xii) preparing comprehensive mediation submissions and responding to the mediator's detailed questions concerning the strengths and

weaknesses of Plaintiffs' claims; and (xiii) participating in an all-day mediation with Defendants overseen by Judge Phillips, with numerous follow-up emails and telephone conversations.  *See generally* Joint Decl.

Most importantly, Plaintiffs' knowledge was obtained through interviews with former Covisint employees who had relevant information concerning Plaintiffs' allegations.  These interviews provided Plaintiffs with a firm grasp on the facts underlying the allegations.  As a result, Plaintiffs participated in the mediation under the assumption that discovery would fully support their core claims and focused their discussions on issues concerning causation and damages, for which merits discovery was not necessary.  Joint Decl., ¶53.

As noted above, Co-Lead Counsel prepared a detailed mediation statement that was provided to Defendants' counsel prior to the March 7, 2016 mediation session, and also held discussions with Defendants' counsel during the mediation where Defendants' counsel identified arguments they would make if the case were to progress, specifically relating to Defendants' negative causation defense and views on damages.  *Id.*, ¶¶54-56.  Thus, Co-Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise had the litigation continued.

Accordingly, Plaintiffs and Co-Lead Counsel "have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial."  *City of Providence*, 2014 WL 1883494, at *7 (citing *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)); *see also Global Crossing*, 225 F.R.D. at 458 ("the question is whether the parties had adequate information about their claims").  As such, this factor also supports the Settlement.

### 4.      Establishing Liability and Damages Involves Significant Risks

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007); *Austrian & German Bank*, 80 F. Supp. 2d at 177. However, the Court need not "'decide the merits of the case or resolve unsettled legal questions'" (*Cinelli v. MCS Claim Servs.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006)), or "foresee with absolute certainty the outcome of the case." *Austrian & German Bank*, 80 F. Supp. 2d at 177.  Rather, the Court need only weigh the risks of litigation against the certainty of recovery offered by the Settlement.  *See Denney v. Jenkins & Gilchrist*, 230 F.R.D. 317, 337-38 (S.D.N.Y. 2005).

The risks presented by securities litigation generally weigh in favor of final settlement approval.  Courts in this district "'"have long recognized that [securities] litigation is notably difficult and notoriously uncertain."'"  *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 5, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").

While Co-Lead Counsel believe, based on their investigation and other information obtained to date, that the claims asserted against Defendants have merit, they also recognize that Plaintiffs would (and did) face hurdles and uncertainties in prosecuting the Action and recovering a judgment from Defendants.  Joint Decl., ¶¶68-69.  Defendants have articulated various defenses to Plaintiffs' allegations that may have been accepted by the Court at the summary judgment stage, or by the jury at trial.

As this Court is aware, the gravamen of the Complaint was that Defendants' 20% revenue growth projection was materially false and misleading because: (i) the projection was computed using numbers that certain Defendants falsified in the Company's computer system; and (ii) Defendants failed to disclose certain issues in their business that would render the projection unattainable.  Joint Decl., ¶72.  In addition, Plaintiffs alleged that the Company violated its accounting policies by recognizing revenue from certain contracts prior to delivery, which artificially inflated the Company's reported financial results.  *Id.*

## a.    Risks in Establishing Damages

Defendants, however, have maintained throughout the litigation that ***even if*** Plaintiffs' allegations were true, Plaintiffs would not be able to recover damages because Defendants rescinded the 20% growth projection before any Class Member suffered meaningful damages.  *Id.*, ¶73. Defendants' argument was premised on the negative loss causation defense contained in the Securities Act, which provides, *inter alia*: "if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable."  *See* 15 U.S.C. §77k(e). Defendants argued that after they publicly disclosed they would not achieve 20% revenue growth, any subsequent depreciation in value of Covisint stock must have been caused by something other than the false projection because the projection no longer remained in the market after that date. Accordingly, Defendants claimed that damages awarded would be well under the statutory cap imposed by Section 11.

- 17 -

Defendants specifically pointed to the following dates during the Class Period when they believed that damages would be reduced significantly as a result of the negative causation defense:

**January 23, 2014:**

On January 23, 2014, after the close of trading, Covisint disclosed that it was no longer forecasting 20% total revenue growth for 2014, but instead was projecting revenue growth in the 10% to 12% range.  In addition, the Company disclosed a significant decrease in automotive service revenues based in large part on the loss of business from General Motors.  Over the next few trading days, the price of Covisint stock declined from $12.84 on January 23, 2014, to a closing price of $8.74 on January 27, 2014.

Defendants claimed that any subsequent share price declines could not have been caused by the 20% growth rate projection because this revised projection of growth in the 10% to 12% range removed the 20% projection from the market.  By January 27, 2014, the price of Covisint stock dropped to $8.74 per share.  Thus, the value used to compute damages in the case should be no less than the January 27, 2014 closing price of $8.74.

Plaintiffs argued that the January 23, 2014 disclosure was not fully curative because it failed to reveal anything about how customers were becoming increasingly dissatisfied with the Company's products and service, that the Company was at risk of losing its customers or that the Company's financial results were misstated in the Registration Statement.

If the jury accepted Defendants' argument, however, then under the statutory formula for computing damages in a Section 11 case, *i.e.*, price paid up to the IPO price ($10) minus the value of the stock ($8.74), multiplied by the number of shares (7.36 million shares), damages would be limited to just $9.3 million.  Under this scenario, ***the Settlement represents 86% of the recoverable damages in the case.***

**March 13, 2014:**

On March 13, 2014, before the market opened, Covisint announced preliminary financial results for the fourth quarter fiscal 2014.  Covisint revealed that revenues for the fourth quarter would be between $24 and $25.5 million.  Upon this news, the price of Covisint stock dropped to the March 13, 2014 closing price of $7.78 per share.

Defendants claim that because Covisint pre-released a projected range for its fiscal fourth quarter revenue, investors were then able to utilize those figures to determine that the Company's projected total revenue growth for FY 2014 would be in the range of 6.6% to 8.8% year-over-year.  Thus, any subsequent decline in the price of Covisint stock could not have been caused by the 20% revenue growth projection contained in the Registration Statement.  Thus, the value used to compute damages in this case should be no less than the $7.78 closing price on March 13, 2014.

Plaintiffs argued that these revised figures continued to overstate the Company's revenue growth rate and, even if this disclosure corrected the Company's previously issued false projection, it still failed to correct the other misstatements and omissions in the Registration Statement.

If the jury accepted Defendants' theory, however, then under the statutory formula for computing damages in a Section 11 case, *i.e.*, price paid up to the IPO price ($10) minus the value of the stock ($7.78), multiplied by the number of shares (7.36 million shares), damages would be limited to just $16.3 million.  Under this scenario, ***the Settlement represents 49% of the recoverable damages in the case.***

**May 22, 2014:**

On May 22, 2014, after the close of trading, Covisint issued a press release announcing its financial results for the fiscal fourth quarter and full-year fiscal 2014.  The Company revealed that its

revenue in fiscal 2014 grew by just 7%.  The price of Covisint stock declined from a closing price of $7.09 on May 22, 2014 to a closing price of $5.88 on May 23, 2014.

Defendants claimed that because Plaintiffs' Complaint was premised on the May 22, 2014 disclosure, damages must be cut off on that date and the value used to compute damages in this case should be no less than the March 23, 2014 closing price of $5.88.  Plaintiffs, however, argued that the statute specifically mentions the date on which the Action was brought and, therefore, that should be the relevant date for computing damages.

If the jury accepted Defendants' theory, then under the statutory formula for computing damages in a Section 11 case, *i.e.*, price paid up to the IPO price ($10) minus the value of the stock ($5.88), multiplied by the number of shares (7.36 million shares), damages would equal $30.3 million.  Under this scenario, ***the Settlement represents 26% of the recoverable damages in the case.***

## May 30, 2014:

Plaintiff Karen Desrocher instituted this Action on May 30, 2014.  Section 11 of the Securities Act imposes a statutory cap on damages equal to the difference between the price paid up to the IPO price  and the value of the stock on the day the suit was brought.  Assuming that the value of the stock equaled its price on May 30, 2014, then under the statutory formula for computing damages in a Section 11 case, *i.e.*, price paid up to the IPO price ($10) minus the value of the stock ($5.06), multiplied by the number of shares (7.36 million shares), damages would be capped by statute at $36.4 million.  Thus, ***the Settlement represents 22% of the maximum recoverable damages in the case, assuming all of Defendants' causation arguments failed and Plaintiffs were able to establish liability.***

Issues relating to damages would have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."[6]  For this reason, courts have recognized that when parties will likely rely on significant expert testimony and analysis, settlement is favored.  *See Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008).

### b.      Risks in Establishing Liability

Although Plaintiffs were confident that they would be able to establish that Defendants violated the Securities Act, Defendants nonetheless denied Plaintiffs' allegations.  Defendants would certainly raise these defenses at trial and there can be no guarantee that the jury would agree with Plaintiffs regarding liability.[7]

### c.      The Risks Justify the Settlement

By the time the parties agreed on the proposed Settlement, Co-Lead Counsel had come to the conclusion that certain of the defenses described above might resonate with jurors, particularly Defendants' negative causation defense, and would render the inherently difficult burden of proving the elements of Plaintiffs' claims as to all of the Defendants even more difficult.  While Plaintiffs remained confident in their ability to ultimately prove their claims and to counter any asserted affirmative defenses, the risk of losing at summary judgment, trial or on appeal, when weighed against the immediate and substantial benefits of an $8,000,000 settlement, which represents a substantial percentage of Plaintiffs' estimate of damages – and far exceeds the median percentage

---

[6]   *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

[7]   The Underwriter Defendants and the Company's Outside Directors had due diligence defenses available to them under the Securities Act that they would be expected to press, putting a recovery against them at risk.

recovery in similar securities cases resolved nationally over the past 10 years (just 11.4%), and within this Circuit over the same time period (just 2.3%),[8] certainly supports a finding that the Settlement is in the best interest of the Class.

### 5.    Maintaining Class Action Status Through Trial Presents Risk

After extensive briefing, on February 22, 2016, the Court issued an order granting class certification.  However, even with a certified Class, Defendants may have moved to decertify the Class before trial or on appeal, as class certification may be reviewed at any stage of the litigation.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Thus, even though the Class was certified, there still remained the risk that the class certification would not be maintained through trial.  To the extent that there was any uncertainty regarding this issue, the Settlement eliminates it, and thus, this factor weighs in favor of the Settlement.

### 6.    Defendants' Ability to Withstand a Greater Judgment

A court may consider a defendant's ability to withstand a judgment greater than the settlement amount, although it is not generally one of the determining factors.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  Indeed, courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement.  "[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."  *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is

---

[8]    *See infra* at 24; *see also* Joint Decl., Ex. A.

not required to "empty its coffers" before a settlement can be found adequate.'").  Regardless, the Settlement, which recovers a significant percentage of Plaintiffs' actual estimate of damages, eliminates any such risk of non-collection.  In fact, as of July 28, 2016, the Settlement Amount has been segregated and earning interest for the Class.

### 7.   The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119.  A court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130.  The "range of reasonableness" has been described by the Second Circuit as a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (The determination of a reasonable settlement "is not susceptible of a mathematical equation yielding a particularized sum," but turns on whether the settlement falls within "'a range of reasonableness.'") (citing *Newman*, 464 F.2d at 693); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, the $8,000,000 Settlement is a substantial result for the Class, especially in light of the stage of litigation, the risks associated with continued litigation of this complex securities class action, and the total amount of damages.  Plaintiffs estimated that a ***maximum*** of approximately $36.4 million in §11 damages could be recovered by the Class, but Defendants had arguments,

- 23 -

which, if accepted, could reduce damages to $9.3 million, $16.3 million or $30.3 million.  Joint

Decl., ¶75.  *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000)

(approving settlement amounting to 5.2% of damages for common stock holders); *see also Union*

*Carbide*, 718 F. Supp. at 1103 ("The Court of Appeals has held that a settlement can be approved

even though the benefits amount to a small percentage of the recovery sought.  The essence of

settlement is compromise."); *Global Crossing*, 225 F.R.D. at 461 ("'The fact that a proposed

settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

that the proposed settlement is grossly inadequate and should be disapproved.'") (quoting *Grinnell*,

495 F.2d at 455).[9]

Indeed, the Settlement far exceeds the median recovery as a percentage of estimated damages

in all securities class action settlements, which was 2.5% and 1.8% during 2006-2014 and 2015,

respectively.  *See* Joint Decl., Ex. A.  In securities class actions that settled with estimated damages

of less than $50 million (where this Action falls), during 2006-2014, the median recovery was

11.4%, and for cases that settled in 2015, the median recovery was just 6.7%.  *Id.*  When focusing

specifically on settlements within the Second Circuit from 2006 through 2015, the Settlement

compares even more favorably.  During that time, the median settlement as a percentage of estimated

damages in the Second Circuit was only 2.3%.  *Id.*  Thus, under any objective metric, the $8,000,000

all cash recovery here exceeds all of the benchmarks.

Moreover, the Settlement offers the opportunity to provide immediate relief to the Class,

rather than speculative payment years down the road.  *AOL Time Warner*, 2006 WL 903236, at *13

---

[9]   Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of
Settlement ("Preliminary Approval Memo") (Dkt. No. 74) incorrectly stated that the Settlement
represents 14% of Plaintiffs' estimate of the maximum provable damages.  *See* Preliminary
Approval Memo at 11.

- 24 -

(where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

The Settlement eliminates the numerous risks involved in litigation – especially litigation that involves the complex issues inherent in securities class actions. In light of the complex legal and factual issues typically present in securities class actions, the unpredictable outcome of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of this substantial Settlement is readily apparent. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 366-67. Accordingly, Plaintiffs respectfully submit that the immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the risks of litigation.

*     *     *

In sum, the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Settlement being approved, and Plaintiffs respectfully urge the Court to do so.

## VI.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole. Specifically, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180 (quoting *Global Crossing*, 225 F.R.D. at 462; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).

- 25 -

The Plan of Allocation, which is set forth in the Notice, was prepared following extensive discussion and review by Co-Lead Counsel, Plaintiffs, and their damages consultant, and reflects the statutory calculation of damages under §11 of the Securities Act.  Joint Decl., ¶85.  Thus, the Plan of Allocation calculates Class Member claims as they would have been calculated had Plaintiffs prevailed at trial.  The Plan of Allocation provides that Class Members who file timely and valid Proof of Claim forms will receive a *pro rata* share of the Net Settlement Fund based on the value of their "Recognized Loss Amounts."  The Plan of Allocation is based upon the following premises (which are standard in securities class actions such as this): (i) the market price of Covisint common stock was artificially inflated by Defendants' alleged misstatements; (ii) the degree of artificial inflation decreased with each corrective disclosure of adverse information; and (iii) the value of an Authorized Claimant's Recognized Loss Amount should vary depending on when the Authorized Claimant bought and/or sold Covisint securities.  The calculation of a Class Member's Recognized Loss Amount is based primarily on the change in the level of alleged artificial inflation in the price of Covisint stock at the time of purchase and at the time of sale.  Joint Decl., ¶86.

Co-Lead Counsel believe that the Plan of Allocation is fair and reasonable and respectfully submit that it should be approved by the Court.  Notably, there have been no objections to the Plan of Allocation to date,[10] which also supports the Court's approval.  *Veeco*, 2007 WL 4115809, at *7; Maley, 186 F. Supp. 2d at 367.

---

[10]   If Co-Lead Counsel receive any objections to the Plan of Allocation, they will be addressed in Plaintiffs' reply brief scheduled to be filed on December 8, 2016.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs and Co-Lead Counsel respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable and adequate, and enter the final Judgment approving the Settlement.

DATED:  August 25, 2016                        Respectfully submitted,

                                                          ROBBINS GELLER RUDMAN
                                                            & DOWD LLP
                                                          SAMUEL H. RUDMAN
                                                          ROBERT M. ROTHMAN


                                                                   s/ Robert M. Rothman
                                                          ROBERT M. ROTHMAN

                                                          58 South Service Road, Suite 200
                                                          Melville, NY  11747
                                                          Telephone:  631/367-7100
                                                          631/367-1173 (fax)
                                                          srudman@rgrdlaw.com
                                                          rrothman@rgrdlaw.com

                                                          ROBBINS GELLER RUDMAN
                                                            & DOWD LLP
                                                          ELLEN GUSIKOFF STEWART
                                                          655 West Broadway, Suite 1900
                                                          San Diego, CA  92101-8498
                                                          Telephone:  619/231-1058
                                                          619/231-7423 (fax)
                                                          elleng@rgrdlaw.com

                                                          JOHNSON & WEAVER, LLP
                                                          FRANK J. JOHNSON
                                                          600 West Broadway, Suite 1540
                                                          San Diego, CA  92101
                                                          Telephone:  619/230-0063
                                                          619/255-1856 (fax)
                                                          frankj@johnsonandweaver.com

- 27 -

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonandweaver.com

Co-Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I, Robert M. Rothman, hereby certify that on August 25, 2016, I caused a true and correct

copy of the attached:

Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of
Settlement and Plan of Allocation

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filings to all counsel registered to receive such notice.



s/ *Robert M. Rothman*
ROBERT M. ROTHMAN